IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JUAN RIOS QUINONES, | ) | CIVIL 14-00497 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITEDHEALTH GROUP | ) | |
| INCORPORATED; | ) | |
| UNITEDHEALTHCARE, INC.; and | ) | |
| UNITEDHEALTHCARE INSURANCE | ) | |
| CO., | ) | |
| | ) | |
| Defendants. | ) | |


**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS
TO PLAINTIFF'S ALLEGATIONS RELATING TO MEDICARE BENEFITS**

Before the Court is Defendants UnitedHealth Group
Incorporated, UnitedHealthcare, Inc., and UnitedHealthcare
Insurance Company's (collectively "Defendants") Motion for
Judgment on the Pleadings as to Plaintiff's Allegations Relating
to Medicare Benefits ("Motion"), filed on April 1, 2015.  [Dkt.
no. 31.]  Plaintiff Juan Rios Quinones ("Plaintiff") filed his
memorandum in opposition on May 18, 2015, and Defendants filed
their reply on May 22, 2015.  [Dkt. nos. 42, 44.]  This matter
came on for hearing on June 8, 2015.  After careful consideration
of the Motion, supporting and opposing memoranda, and the
arguments of counsel, Defendants' Motion is HEREBY GRANTED IN
PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

On October 31, 2014, Plaintiff filed his sixty-page Complaint for Declaratory and Injunctive Relief, and for Compensatory and Punitive Damages ("Complaint"), asserting various federal and state claims related to Defendants' year-long delay in preauthorizing Plaintiff for a new Personal Mobility Device ("PMD").  Plaintiff alleges that from birth he has been fully disabled and he is eligible for Medicaid and Medicare as a "dual eligible."  [Complaint at ¶¶ 6-7.]  He requires a PMD to be "mobile and productive, to engage in the activities open to other enrollees in the State of Hawai`i's Medicaid Programs, and to otherwise participate in the community."  [Id. at ¶ 8.]

Since approximately May 2011, all of Plaintiff's coverage has been coordinated by Defendants' programs, Medicare Advantage and QUEST Expanded Access.  Plaintiff alleges that he decided to enroll in both Defendants' Medicare and Medicaid programs because Defendants' agent represented to him that they could provide prompt repair and replacement PMDs as needed. Plaintiff alleges that, since Defendants provide insurance coverage under state and federal law, and Medicaid on behalf of the State of Hawai`i, they are state actors.  [Id. at ¶¶ 12-27, 70-76.]

Plaintiff alleges that, in January 2013 when his PMD needed repairs, Defendants' technician took it away for over a

week without leaving a replacement, resulting in Plaintiffs'
complete confinement to his apartment and reliance on friends.
On January 15, 2013, a team of Plaintiff's health care providers
submitted to Defendants a comprehensive survey requesting a new
PMD with "Group 3" accessories, including "power tilt and
recline," "power adjustable seat height," and "power leg
elevation." The team reported that all accessories were
medically necessary for Plaintiff to perform normal daily tasks
unassisted, enable him to reposition himself in the PMD to limit
persistent pain, and transfer himself in and out of the PMD.
[Id. at ¶¶ 76-81, 85-95.]

   Plaintiff further alleges that thereafter Defendants:
delayed in investigating and processing his claim, including
taking over five months to send their own specialists to
Plaintiff's home for assessment; mishandled the request for
preauthorization; attempted to coerce Plaintiff to accept Group 2
accessories that were insufficient to serve him; denied his
coverage on June 11, 2013; and, after he appealed, again denied
his request on November 15, 2013. After he hired an attorney to
further pursue his requests, in January 2014, Defendants
reassessed Plaintiff and granted coverage for a new Group 3 PMD.
[Id. at ¶¶ 96-149.]

   Plaintiff alleges that, based on the year he was
without a fully functional Group 3 PMD, he was unnecessarily

confined to his apartment and segregated from the community, he was at risk for injury while moving about the apartment, he suffered depression, and experienced anger and other strong emotions. [Id. at ¶ 147.] The Complaint includes the following claims: violation of civil rights under the Medicaid Act, pursuant to 42 U.S.C. § 1983 ("Count I"); violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* ("Count II"); violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Count III"); violation of the Medicaid statutes and regulations, 42 U.S.C. §§ 1396-1396v and 42 C.F.R. § 435.930(a) ("Count IV"); violation of Haw. Rev. Stat. Chapter 489 ("Count V"); bad faith ("Count VI"); negligent infliction of emotional distress ("Count VII"); intentional infliction of emotional distress ("Count VIII"); and punitive damages ("Count IX"). [Id. at ¶¶ 147, 150-233.]

Plaintiff requests the following relief: a declaratory judgment that Defendants must comply with all required policies, procedures, customs and practices under Medicare and Medicaid to ensure that wheelchairs and PMDs for the most vulnerable Hawai`i residents are safe and in good repair; an injunction requiring Defendants to provide loaner accessaries for the safety of dual eligibles; an injunction appointing a special master to review all of Defendants' denials of coverage for wheelchairs or PMDs, where the insureds claimed they were medically necessary; a

declaratory judgment that Defendants discriminated against Plaintiff; a declaratory judgment that Defendants violated "Hawai`i's unfair competition insurance statute[;]" general, special, and punitive damages; attorneys' fees and costs; and all other appropriate relief. [Id. at pgs. 57-62.]

On December 24, 2014, Defendants filed their answer, [dkt no. 19,] and on April 1, 2015, they filed four motions for judgment on the pleadings, including the instant Motion.[1] In the Motion, Defendants move to dismiss in part or whole all of the claims to the extent that they arise under the Medicare Act,[2] and Plaintiff did not exhaust his administrative remedies as required. Further, they argue that waiver of the exhaustion requirement is inapplicable here. The Court agrees, and grants the Motion, dismissing all or part of each claim as follows.

## STANDARD

### I. Medicare Exhaustion

"Judicial review of claims arising under the Medicare Act is available only after the Secretary [of Health and Human Services ("Secretary")] renders a 'final decision'" on the claim,

_____

[1] In the other three motions, Defendants request dismissal of the first four counts of the Complaint on independent grounds. [Dkt. nos. 32, 33, 34.] Those motions are set for hearing in July, August, and October. See EO, filed 4/3/15 (dkt. no. 36); EO, filed 4/3/15 (dkt. no. 37); EO, filed 4/28/15 (dkt. no. 40).

[2] Title XVIII of the Social Security Act, 79 Stat. 291 as amended, 42 U.S.C. § 1395 et seq., is commonly referred to as the "Medicare Act."

in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act."  <u>Heckler v. Ringer</u>, 466 U.S. 602, 605 (1984) (footnote omitted).

Section 405(g) provides, in pertinent part:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.  The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . .  The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.

Further, § 405(h) provides:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to the hearing.  No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

The Ninth Circuit has explained that, "[t]he Act's exhaustion requirement, 42 U.S.C. § 405(h), makes judicial review under a

related provision, 42 U.S.C. § 405(g), 'the sole avenue for judicial review' for claims 'arising under the Medicare Act.'" Uhm v. Humana, Inc., 620 F.3d 1134, 1140 (9th Cir. 2010) (footnotes and some quotation marks omitted) (quoting Heckler, 466 U.S. at 614-15, 104 S. Ct. 2013, 80 L. Ed. 2d 622).

> The Supreme Court has identified two circumstances in which a claim "arises under" the Medicare Act: (1) where the "standing and the substantive basis for the presentation of the claims" is the Medicare Act, Heckler, 466 U.S. at 615, 104 S. Ct. 2013 (internal quotations omitted); and (2) where the claims are "inextricably intertwined" with a claim for Medicare benefits, id. at 614, 104 S. Ct. 2013. See also Kaiser [v. Blue Cross of California], 347 F.3d [1107,] 1112 [(9th Cir. 2003)]. One category of claims that we and other courts have found to "arise under" the Act are those cases that are "'[c]leverly concealed claims for benefits.'" Kaiser, 347 F.3d at 1112 (quoting United States v. Blue Cross & Blue Shield of Ala., Inc., 156 F.3d 1098, 1109 (11th Cir. 1998)).

Id. at 1141 (some alterations in Uhm). Further, the Supreme Court has rejected the argument that "simply because a claim somehow can be construed as 'procedural,' it is cognizable in federal district court by way of federal-question jurisdiction." Heckler, 466 U.S. at 614; see also Kaiser, 347 F.3d at 1115 (citing Heckler, 466 U.S. at 637 for the proposition that "§ 405(h) bars suits without regard to whether they are, on their face, 'procedural' or 'substantive'). Moreover, "even a state law claim may 'arise under' the Medicare Act," and "the fact that plaintiffs seek damages beyond the reimbursement payments

available under Medicare does not exclude the possibility that their case arises under Medicare." <u>Uhm</u>, 620 F.3d at 1142 (citations, internal quotation marks and brackets omitted).

## II. **Waiver**

Even if a claim "arises under" the Medicare Act, a plaintiff may prove that, under the specific facts of the case, exhaustion is unnecessary. "[T]he exhaustion requirement of § 405(g) consists of a nonwaivable requirement that a claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." <u>Heckler</u>, 466 U.S. at 617 (citations and internal quotation marks omitted).

As to the waivable element requiring full pursuit of the Secretary's remedies,

> [t]he Ninth Circuit has "adopted a three-part test for determining whether a particular case merits judicial waiver of § 405(g)'s exhaustion requirement. The claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)."

<u>Morando v. Colvin</u>, Civil No. 13-00485 LEK-KSC, 2014 WL 2215922, at *3 (D. Hawai`i May 28, 2014) (quoting <u>Kildare v. Saenz</u>, 325 F.3d 1078, 1082 (9th Cir. 2003)).

> "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function

8

efficiently and so that it may have an opportunity
to correct its own errors, to afford the parties
and the courts the benefit of its experience and
expertise, and to compile a record which is
adequate for judicial review."

Kaiser, 347 F.3d at 1115 n.4 (quoting Weinberger v. Salfi, 422
U.S. 749, 765, 95 S. Ct. 2457, 2467, 45 L. Ed. 2d 522 (1975)).

## DISCUSSION

The crux of Defendants' argument is that, no matter how
he pleads it, Plaintiff's lawsuit arises under the Medicare Act
because it is inextricably intertwined with the denial of his
benefits request.  Plaintiff responds that, while on some level
his Complaint technically arises from his benefits request, he
does not request benefits or reimbursement, or anything that
could be remedied by the Secretary.  This litigation, he argues,
is about a scheme whereby an insurer - tasked with providing
coverage under both the insured's primary and secondary insurance
plans – intentionally, and in a discriminatory manner, delayed
the coordination of benefits between the two plans.  Defendants
reply that, even if some parts of his claims challenge
Defendants' actions related to Plaintiff's Medicaid benefits, to
the extent that they challenge Defendants' activities under
Medicare, the Secretary has an interest in their resolution, and
thus they require exhaustion.

This Court agrees with Defendants, and finds that
insofar as Plaintiff's claims relate to the delay of the

coordination of benefits, they are inextricably intertwined with the Medicare benefits decision, and Plaintiff must first present them to the Secretary.  Further, since Plaintiff does not allege presentment, and he has already received his PMD, there is no basis for waiver, in particular, to avoid irreparable harm.

## I.    **Exhaustion**

Although the Complaint is rather detailed, it is not clear whether or not Plaintiff brings his claims under his Medicaid, as opposed to his Medicare, plan.  Defendants suggest that this lack of precision is an intentional attempt to avoid the preemption issue that is at the heart of the Motion.  [Mem. in Supp. of Motion at 11-12.]  For instance, in the introductory section, the Complaint alleges:

> Defendants discriminated against [Plaintiff] in the State of Hawai`i's QUEST Expanded Access Medicaid program on account of his disability in denying him equal enjoyment of the goods, services, facilities, privileges, advantages, and covered benefits to which he had legitimate claims of entitlement, and deliberately and intentionally subjecting him to inescapably unsafe and dangerous circumstances for over a year with evident indifference to the potential that he would suffer physical harm or even death.

[Complaint at ¶ 2.]  Here, he claims that Medicaid denied his request for benefits.

On the other hand, in more detailed allegations later in the Complaint he alleges that the denial was pursuant to his Medicare plan.  For example, Plaintiff alleges that, "[e]ven if

10

Medicare did not cover the 'Group 3' PMD and requested
accessories, Medicaid did, and thus the denial was made in bad
faith because [Defendants] were contracted with the State of
Hawai`i to provide Plaintiff's medically necessary medical
assistance in the Medicaid program." [Id. at ¶ 118.] Here,
Plaintiff concedes that the denial was made pursuant to his
Medicare plan. Based on numerous changes in position like this
one, it is not clear what exactly Plaintiff argues that
Defendants did wrong, and therefore it is virtually impossible to
determine whether his claims arise under the Medicare Act or, for
instance, the Medicaid Act.

　　　　However, in his opposition, Plaintiff clarifies his
theory of the case. The following statements are illustrative.
He argues that:

- "Defendants improperly and unlawfully withheld the
  requests [Plaintiff's] treating providers submitted for
  preauthorization of his PMD from his secondary
  (Medicaid) coverage for nearly a year instead of
  automatically submitting it when they ostensibly
  decided it was not covered by their Medicare Advantage
  plan." [Mem. in Opp. at 6.]

- "[The Complaint] alleges the facts of Defendants' scheme
  to delay preauthorizing coverage of his PMD by denying
  coverage under their Medicare Advantage plan while
  withholding coordination of benefits with his Medicaid
  plan coverage. . . . [T]hey employed their ownership
  of a Medicare Advantage plan as part of a scheme to
  deny benefits [Plaintiff] was ultimately entitled to
  receive as a Medicaid beneficiary[.]" [Id. at 8.]

- "If indeed it was true that Medicare had issued the
  advance determination of non-coverage, that denial
  triggered Defendants' duty to immediately submit the

11

preauthorization request to [Plaintiff's] plan for a
Hawaii's statutory medical necessity determination."
[Id. at 12.]

From these statements, Plaintiff alleges that
Defendants discriminated against him by intentionally delaying
making a decision on his benefits request, denying his requests
under the Medicare plan, and delaying transferring his request to
the Medicaid plan.

Framed like this, the Court finds that Plaintiff's
challenge to Defendants' actions – in delaying the decision on a
Medicare benefit request and then withholding from the Medicaid
plan the benefit request and related application information –
"arises under" the Medicare Act.  The Supreme Court and the Ninth
Circuit have held that the test for whether a claim arises under
the Medicare Act is broad.  See, e.g., Heckler, 466 U.S. at 615
(explaining that the Supreme Court has "construed the 'claim
arising under' language quite broadly" and applying the "broad
test"); Ardary v. Aetna Health Plans of Cal., Inc., 98 F.3d 496,
500 (9th Cir. 1996) (recognizing that the Supreme Court
"instructed [it] to read the term 'arising under' broadly"
(citing Heckler)).  The result is no different even though:
Plaintiff does not request a benefit or reimbursement for a
benefit; some of his remedies are injunctive rather than
monetary; or the lawsuit challenges the process by which
Defendants denied the benefit rather than purely the substance of

the denial.  The Supreme Court and the Ninth Circuit have rejected all of these arguments.  See, e.g., Uhm, 620 F.3d at 1141-42 (discussing Heckler, Kaiser, and Ardary and expressly rejecting these arguments).  The coordination of benefits under the Medicare Act is still "inextricably intertwined" with Plaintiff's Medicare benefits request.

Plaintiff argues that requiring exhaustion would be erroneous because there is nothing that the Secretary can do to remedy the harm he suffered.  This argument is inconsistent with the allegations in his Complaint.  In fact, Plaintiff requests a declaratory judgment that Defendants "institute and comply with specific policies, procedures, customs and practices" related to the PMDs offered under their "Medicaid or Medicare coverage[.]"  Further, he requests "injunctive relief appointing a special master to review [Defendants'] denials of coverage for wheelchairs or PMDs[.]"  [Complaint at pgs. 57-58.]  These remedies seek this Court's oversight of Medicare policies and procedures, which is clearly within the purview of the Secretary in enforcing the Medicare Act.

Ardary – which Plaintiff analogizes to, and relies heavily upon – supports this point.  In Ardary, the Ninth Circuit held that a wrongful death suit did not arise under the Medicare Act, where the decedent relied on representations by the insurer in purchasing her plan that she would be airlifted from a remote

hospital in the event of emergency; she died when she suffered a heart attack and was not airlifted. See 98 F.3d at 497-98. In Uhm, the Ninth Circuit explained that in Ardary exhaustion was not required because the lawsuit "was '*at bottom* not seeking to recover *benefits*' **and because the injury complained about could not have been redressed <u>at all</u> via the Medicare Act's administrative review process**." Uhm, 620 F.3d at 1142 (quoting Ardary, 98 F.3d at 500) (italics in Uhm; other emphases added). The family in Ardary sought "general and punitive damages on the basis of six state law theories of recovery" for the loss of decedent's life. 98 F.3d at 498. Unlike Ardary, here Plaintiff's injury could be partly redressed by the Secretary, and for that reason exhaustion makes sense.[3]

Since Plaintiff's coordination of benefits theory is inextricably intertwined with a Medicare benefits decision, the Court CONCLUDES that his claims arise at least in part under the Medicare Act, and require Plaintiff to seek administrative review

---

[3] The Court, however, is not convinced by Defendants' contention that the Ninth Circuit's interpretation of Ardary in Kaiser, which preceded Uhm, necessarily forecloses Plaintiff's interpretation of Ardary as covering his claim. See Reply at 10-12. In Kaiser, the Ninth Circuit explained that "the Ardary analysis convinces us that its holding does not extend beyond patients and torts committed in the sale or provision of medical services." 347 F.3d at 1113. It is arguable whether delaying making a decision on Plaintiff's request for a new PMD could be interpreted to be a delay in the "provision of a medical service," and thus fall within the Ardary rule. This is immaterial, however, since the later interpretation in Uhm further clarified (and limited) Ardary.

from the Secretary before raising them in federal court.

## II. **Waiver**

It is Plaintiff's burden to prove that this Court should waive the exhaustion requirement. Plaintiff argues that presentment is not necessary because there is nothing for the Secretary to decide, and waiver is proper because: his claims are collateral to any benefits decision; the statute of limitations will run if he pursues administrative review, leading to irreparable harm; and the Secretary will lack jurisdiction and therefore exhaustion would be futile. [Mem. in Opp. at 18-22.] These arguments fail.

First, the presentment requirement is jurisdictional and nonwaivable. See Johnson v. Shalala, 2 F.3d 918, 921 (9th Cir. 1993) ("The presentment requirement is jurisdictional, and therefore cannot be waived by the Secretary or the courts."). As Defendants explain, presentment serves a channeling function. [Reply at 15-16.] "[I]t assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts[.]" Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 13 (2000). A determination as to an injunction, or even an award of damages, for delay in the coordination of benefits here would usurp the decision-making power of the Secretary.

Further, the fact that Plaintiff appealed the initial

15

denials does not suffice to fulfill the presentment requirement. See Heckler, 466 U.S. at 606 ("the Secretary has provided that a 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through **all** designated levels of administrative review" (emphasis added) (footnote omitted)); see also Spagnolo v. U.S. Soc. Sec. Admin., No. CV 11-00353 DAE-RLP, 2011 WL 2945808, at *2 (D. Hawai`i July 19, 2011) ("A 'final decision' is rendered only after the individual has 'pressed his claim' through all levels of administrative review." (quoting Heckler, 466 U.S. at 605)). Plaintiff neither alleges that he exhausted his administrative remedies, nor contests Defendants' argument that he did not. Therefore, he must exhaust his claims through the administrative process, and present those claims to the Secretary.

Second, exhaustion serves a purpose here and waiver is not appropriate. As noted, Plaintiff requests a partial injunction over the benefits process. At the very least, this request is not collateral to benefits decisions. Even if the Court determined that coordination of benefits was collateral to a benefits decision, Plaintiff does not make any colorable showing that requiring exhaustion would lead to irreparable injury. The only injury Plaintiff mentions is the running of the statute of limitations. See Mem. in Opp. at 21 ("In the absence of tolling the applicable statute of limitations, [Plaintiff's]

claims, which include claims for injunctive relief and declarations, could be barred before he is permitted to refile them."). It is not clear, however, to which statute of limitations he is referring. Section § 405(g) provides a sixty-day statute of limitations for filing after an insured receives notice of a contrary decision by the Secretary. This statute would clearly not require tolling. Plaintiff does not cite the statute of limitations for benefits appeals, but this Court questions whether, if he had let that statute run in pursuing the instant lawsuit, that type of injury could support waiver. It makes little sense that it would since it would create an exception that swallows the rule requiring exhaustion.

The only conceivable, legitimate injury would be if Plaintiff still did not have access to his PMD. However, Plaintiff has conceded that he received his PMD. <u>See</u> Complaint at ¶ 145. And he makes no argument as to how the past decision-making process by Defendants could harm that benefit in the future. <u>See, e.g.</u>, <u>Kaiser</u>, 347 F.3d at 1115 ("**past** injury does not meet the irreparability requirement for waiver" (emphasis in <u>Kaiser</u>)).

Finally, Plaintiff has made no showing that exhaustion would be futile. Although the Secretary may not have any expertise, for instance, regarding civil rights law, she can make

factual determinations which would inform this Court's review.[4]
Moreover, the Secretary is in a better position than this Court
to determine whether Defendants acted properly in analyzing
Plaintiff's benefit request. She will know whether Defendants
violated administrative regulations and practices in how they
reviewed and initially denied Plaintiff's requests for the
Group 3 PMD. The Court therefore finds that exhaustion would
"not be futile in the context of the system." See id. (footnote
omitted).

For all of these reasons, Plaintiff must present his
challenge to Defendants' coordination of benefits to the
Secretary. While, ultimately, the Secretary might find that
certain issues that Plaintiff raises are beyond her Medicare Act
authority, it makes practical sense to have her review
Plaintiff's claims first.

The foregoing analyses regarding whether Plaintiff's
claims "arise under" the Medicare Act, are "inextricably
intertwined" with a benefits decision, and waiver is proper are
best encapsulated by the Ninth Circuit's statement in Kaiser:

> If a court were to prematurely tackle a question
> inextricably intertwined with an issue properly
> resolved by an agency, the court would defeat the
> purposes of § 405(g) and (h) even if the question
> was not one that the agency has the authority to
> answer fully. More specifically, even if the

---

[4] The Court notes that currently the Secretary is Sylvia
Mathews Burwell.

> claims raised here are broader than those suitable
> for resolution by the [Secretary], deciding
> [Plaintiff's] claims would mean also passing
> judgment on questions which are appropriately
> first answered by the [Secretary].  This is why
> all inextricably intertwined claims must first be
> raised in an administrative process.  In that
> process, the agency, with the benefit of its
> experience and expertise, can resolve whatever
> issues it can, limiting the number of issues
> before judicial review (and limiting review on
> those issues according to the appropriate standard
> of deference).  On other issues, the [Secretary]
> may make a determination that it is without
> authority to decide and grant the provider a right
> to obtain judicial review.

See 347 F.3d at 1116.  The Court thus CONCLUDES that Plaintiff's

claims regarding the coordination of benefits must be exhausted,

and waiver in this case is not proper.

III. **Summary and Application**

The Court FINDS that, insofar as Plaintiff's claims

challenge the coordination of benefits by Defendants, as the

Medicare plan provider, they arise under the Medicare Act and

therefore require exhaustion.  This finding applies to all claims

except Counts I and IV, which allege claims under the Medicaid

Act.  Plaintiff necessarily brings these two claims pursuant to

Medicaid, and not Medicare, statutes and regulations.  The Court

DENIES the Motion as to Counts I and IV, and GRANTS it as to the

other claims.

It DISMISSES WITH PREJUDICE for lack of jurisdiction

Counts II, III, V, VI, VII and VIII, insofar as they challenge

the coordination of benefits for acts taken by Defendants as plan

providers for Plaintiff's Medicare plan.[5]  See, e.g., <u>Heilman v.</u> <u>Sanchez</u>, 583 F. App'x 837, 839-40 (9th Cir. 2014) (holding that "the district court did not abuse its discretion by refusing to grant leave to amend because those aspects of the complaint could not be cured by amendment" (citing <u>Weilburg v. Shapiro</u>, 488 F.3d 1202, 1205 (9th Cir. 2007))).  This includes, but is not limited to, the process by which Defendants denied Plaintiff's initial requests for a new Group 3 PMD, the denials themselves, and any delay in submission of the request to Plaintiff's Medicaid plan. Insofar as Plaintiff challenges decisions made and actions taken by Defendants in their roles as coverage providers under Plaintiff's Medicaid Plan, those claims remain.

## CONCLUSION

On the basis of the foregoing, Defendants UnitedHealth Group Incorporated, UnitedHealthcare, Inc., and UnitedHealthcare Insurance Company's Motion for Judgment on the Pleadings as to

---

[5]  Insofar as "punitive damages are a remedy rather than an independent cause of action," <u>Cortez v. Skol</u>, 776 F.3d 1046, 1050 n.2 (9th Cir. 2015), this Court also DISMISSES WITH PREJUDICE Count IX in its entirety.

Plaintiff's Allegations Relating to Medicare Benefits, filed
April 1, 2015, is HEREBY GRANTED IN PART AND DENIED IN PART.

　　　　IT IS SO ORDERED.

　　　　DATED AT HONOLULU, HAWAII, June 30, 2015.



　　　　　　　　　　　　　　/s/ Leslie E. Kobayashi
　　　　　　　　　　　　　　Leslie E. Kobayashi
　　　　　　　　　　　　　　United States District Judge

**JUAN RIOS QUINONES VS. UNITEDHEALTH GROUP INCORPORATED ET AL.;
CIVIL 14-00497 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS
TO PLAINTIFF'S ALLEGATIONS RELATING TO MEDICARE BENEFITS**