IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

Juan Rios Quinones,     )    CIVIL NO. 14-00497 LEK-RLP
                      )
        Plaintiff,    )
                      )
    vs.             )
                      )
UnitedHealth Group    )
Incorporated;        )
UnitedHealthcare, Inc.; )
UnitedHealthcare Insurance )
Co.,               )
                      )
        Defendants.   )
_____ )

**AMENDED ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON COUNTS IV, VI, VII, AND VIII; (2) GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT X OF PLAINTIFF'S
SUPPLEMENTAL COMPLAINT; AND (3) DENYING AS MOOT PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court are three motions for summary

judgment, all filed on October 24, 2016. Defendants UnitedHealth

Group Incorporated, UnitedHealthcare, Inc., and UnitedHealthcare

Insurance Company (collectively "Defendants") filed a Motion for

Summary Judgment on Counts IV, VI, VII, and VIII ("Defendants'

Summary Judgment Motion A"). [Dkt. no. 210.[1]] Plaintiff

Juan Rios Quinones ("Plaintiff") filed a memorandum in opposition

on November 7, 2016, and Defendants filed a reply on November 14,

2016. [Dkt. nos. 228, 233 (filed under seal).] Defendants also

filed a Motion for Summary Judgment on Count X of Plaintiff's

_____

[1] On October 31, 2016, Defendants filed the motion under
seal. [Dkt. no. 239.]

Supplemental Complaint ("Defendants' Summary Judgment Motion B").
[Dkt. no. 214.]  Plaintiff filed a memorandum in opposition on
November 7, 2016, and Defendants filed a reply on November 14,
2016.  [Dkt. nos. 226, 235 (filed under seal).]  Finally,
Plaintiff filed a Motion for Partial Summary Judgment
("Plaintiff's Summary Judgment Motion").  [Dkt. no. 212.]
Defendants filed a memorandum in opposition on November 7, 2016,
and Plaintiff filed a reply on November 14, 2016.  [Dkt. nos. 224
(filed under seal), 237.]  All three motions came on for hearing
on November 28, 2016.  On December 28, 2016, the Court issued an
Entering Order ruling on all three motions ("12/28/16 EO").
[Dkt. no. 262.]  This Order supersedes the 12/28/16 EO.  After
careful consideration of the motions, supporting and opposing
memoranda, the arguments of counsel, and for the reasons set
forth below:  Defendants' Summary Judgment Motion A is HEREBY
GRANTED; Defendants' Summary Judgment B is HEREBY GRANTED; and
Plaintiff's Summary Judgment Motion is HEREBY DENIED AS MOOT.

## BACKGROUND

The background of this case is well known to all
parties, and is set forth in the Court's June 30, 2015 Order
Granting in Part and Denying in Part Defendants' Motion for
Judgment on the Pleadings as to Plaintiff's Allegations Relating

to Medicare Benefits ("Medicare Act Order").  [Dkt. no. 49.[2]]
The Court will therefore only repeat the background that is
relevant to the instant motions.  In an Entering Order filed on
September 12, 2016 ("9/12/16 EO"), the Court noted that the
dispositive motions deadline had passed, but nevertheless granted
the parties leave to file motions for summary judgment on the
remaining claims.  [Dkt. no. 192.]  The 9/12/16 EO also outlined
those claims:  violation of Medicaid statutes and regulations, 42
U.S.C. §§ 1396-1396v and 42 C.F.R. § 435.930(a) ("Count IV");
[Complaint, filed 10/31/14 (dkt. no. 1), at ¶¶ 180-88;] bad faith
("Count VI"); [id. at ¶¶ 196-209;] negligent infliction of
emotional distress ("NIED" and "Count VII"); [id. at ¶¶ 210-16;
First Supplemental Complaint ("Suppl. Complaint"), filed 8/17/16
(dkt. no. 176), at ¶¶ 30-35;] intentional infliction of emotional
distress ("IIED" and "Count VIII"); [Complaint at ¶¶ 217-25;
Suppl. Complaint at ¶¶ 36-39;] and breach of the continuing duty
of good faith ("Count X") [Suppl. Complaint at ¶¶ 40-45].

## DISCUSSION

I.  **Defendants' Summary Judgment Motion A**

   A.   **Count IV – Violation of
        Medicaid Statutes and Regulations**

        The Complaint alleges that "Title XIX of the Social
Security Act requires that Medicaid services be furnished to

---

[2] The Medicare Act Order is also available at 2015 WL
3965961.

3

eligible individuals without delay attributable to administrative procedures," and that Defendants "denied and unreasonably delayed provision of medically necessary benefits to which Plaintiff was entitled under his Medicaid-Medicare dual eligible enrollment." [Complaint at ¶¶ 182-83 (citing 42 U.S.C. § 1396a(a)(8);[3] 42 C.F.R. § 435.930(a)).[4]]  It is clear from the record, however, that any delay in Plaintiff's receipt of benefits was not caused by Defendants, and Defendants never denied a request for Medicaid coverage in the instant matter.[5]

---

[3] 42 U.S.C. § 1396a(a)(8) states that "[a] State plan for medical assistance must – provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals[.]"

[4] 42 C.F.R. § 435.930(a) states that "[t]he agency must – Furnish Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures[.]"

[5] Plaintiff states that "Defendants' unlawful administration of Medicaid and Medicare benefits is actionable by Plaintiff pursuant to 42 U.S.C. §§ 1983 and 1988, entitling Plaintiff to compensatory damages."  [Complaint at ¶ 185.]  Given this representation, the Court questions whether Count IV is even properly before the Court.  On July 24, 2015, the Court issued its Order Granting Defendants' Motion for Judgment on the Pleadings for Count I (§ 1983) ("7/24/15 Order").  [Dkt. no 57 (also available at 2015 WL 4523499).]  The 7/24/15 Order explained that "'[t]o state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law.'"  7/24/15 Order, 2015 WL 4523499, at *2 (citing Esparza v. Cnty of Los Angeles, 527 F. App'x 638, 639 (9th Cir. 2013)).  The Court found that Defendants were entitled to judgment on the pleadings on Count I because "Plaintiff has not alleged facts to show that the State has
(continued...)

##### 1. **Plaintiff's PMD and Medicare Benefits**

It is undisputed that Plaintiff is eligible for both
Medicare and Medicaid, commonly referred to as being "dual
eligible." [Complaint at ¶ 7; Def.'s Concise Statement of Facts
in Supp. of Summary Judgment Motion A ("Defs.' Summary Judgment
Motion A CSOF"), filed under seal on 10/31/16 (dkt. no. 241), at
¶ 1.] Plaintiff's benefits under both programs are coordinated
by Defendants. [Complaint at ¶ 18; Defs.' Summary Judgment
Motion A CSOF at ¶ 1.] It is also undisputed that, due to his
medical conditions, Plaintiff uses a Personal Mobility Device
("PMD"). [Complaint at ¶ 8; Defs.' Summary Judgment Motion A
CSOF at ¶ 2.]

In the Medicare Act Order, the Court explained,
"[s]ince Plaintiff's coordination of benefits theory is
inextricably intertwined with a Medicare benefits decision,
. . . his claims arise at least in part under the Medicare Act,
and require Plaintiff to seek administrative review from the
[United States Secretary of Health and Human Services

---

⁵(...continued)
exercised coercive power or has provided such significant
encouragement, either overt or covert, that the choice must in
law be deemed to be that of the State." Id. at *5 (citation and
internal quotation marks omitted). Count IV also fails to show
any sort of "coercive power" or "significant encouragement" from
or by the State of Hawai`i. Defendants did not move for summary
judgment based upon this apparent flaw in Plaintiff's claim, and
because the Court finds that there has been no violation of the
Medicaid statute, it will not address this issue in full.

('Secretary')] before raising them in federal court." 2015 WL
3965961, at *7. Moreover, the Court reasoned:

> The [United States] Supreme Court and the
> Ninth Circuit [Court of Appeals] have held that
> the test for whether a claim arises under the
> Medicare Act is broad. See, e.g., Heckler [v.
> Ringer], 466 U.S. [602,] 615 [(1984)] (explaining
> that the Supreme Court has "construed the 'claim
> arising under' language quite broadly" and
> applying the "broad test"); Ardary v. Aetna Health
> Plans of Cal., Inc., 98 F.3d 496, 500 (9th Cir.
> 1996) (recognizing that the Supreme Court
> "instructed [it] to read the term 'arising under'
> broadly" (citing Heckler)). The result is no
> different even though: Plaintiff does not request
> a benefit or reimbursement for a benefit; some of
> his remedies are injunctive rather than monetary;
> or the lawsuit challenges the process by which
> Defendants denied the benefit rather than purely
> the substance of the denial.

Id. at *6 (some alterations in Medicare Act Order).[6] Plaintiff
did not move for reconsideration of the Medicare Act Order.

Defendants seek dismissal of any part of the remaining
claims that relate to: the repair and/or maintenance of
Plaintiff's PMD; and the provision of or refusal to provide
Plaintiff with a loaner PMD. [Mem. in Supp. of Def.'s Summary
Judgment Motion A at 29-30.] Specifically, Defendants argue that
paragraphs 36, 73, 76-77, 79, 83, 148-49, and 206 of the

---

[6] For the reasons expressed in the Medicare Act Order, the
Court refers to Defendants in the instant Order only in their
capacity as Plaintiff's Medicaid provider. See, e.g., Medicare
Act Order, 2015 WL 3965961, at *9 (dismissing with prejudice
Plaintiff's claims, including Counts VI, VII, and VIII, "insofar
as they challenge the coordination of benefits for actions taken
by Defendants as plan providers for Plaintiff's Medicare plan."
(footnote and citation omitted)).

Complaint, as well as paragraphs 2-3, 9-18, 30-35, and 40-45 of
the Supplemental Complaint, relate to PMD repair and maintenance,
as well as the provision of a loaner PMD.  [Id.]  Likely in an
effort to preempt this argument, the Supplemental Complaint
states, "[t]o be absolutely clear, Plaintiff's claims are not
asserted herein, nor have they ever been asserted herein, against
his Medicare Advantage Special Needs Plan which [United
Healthcare ('UHC')] Defendants operate in Hawaii."  [Suppl.
Complaint at ¶ 2.]  David W. Heywood ("Heywood"), Defendants'
Health Plan Chief Executive Officer for Hawai`i, submits:

> Wheelchairs, repairs to wheelchairs, and the
> coordination of loaner wheelchairs during the
> repair process, are all benefits that are covered
> by Medicare for dual eligible members.  Under
> these circumstances, the Medicare plan would need
> to pay as primary coverage, or deny coverage for
> those benefits, before the Medicaid plan would
> have any coverage obligation.

[Def.'s Summary Judgment Motion A CSOF, Decl. of David W. Heywood
("Heywood Decl.") at ¶ 4.]

Plaintiff does not directly address this argument in
his opposition memorandum, but he does dispute it in his
supporting documents.  See Pltf.'s Concise Statement of Facts in
Opp. to Def.'s Summary Judgment Motion A ("Pltf.'s CSOF in Opp.
to Def.'s Summary Judgment Motion A"), filed 11/7/16 (dkt. no.
229), at ¶ 3.]  First, Plaintiff submits an email that quotes

language purportedly drafted by Heywood. [<u>Id.</u>, Exh. 10.[7]]  That

language, however, does not in any way dispute that Medicare

would provide primary coverage for PMD maintenance or repairs, or

that Medicare would have to deny such a claim before Medicaid

would cover it.  Next, Plaintiff cites two depositions, but

neither the deposition of Dr. Ronald Fujimoto nor the deposition

of Jack Sanders ("Sanders") contradict Defendants' statement of

fact.  <u>See</u> Pltf.'s Concise Statement of Facts in Supp. of Pltf.'s

Summary Judgment Motion ("Pltf.'s CSOF in Supp. of Pltf's Summary

Judgment Motion"), filed 10/24/16 (dkt. no. 213), Decl. of Rafael

---

[7] It appears that Plaintiff did not authenticate any of the
documents attached to Plaintiff's CSOF in Opposition to
Defendants' Summary Judgment Motion A.  The Court therefore does
not have to consider these documents.  <u>See, e.g.</u>, <u>Ragan v. Fin.
Am., LLC</u>, Civil No. 10-00187 JMS/BMK, 2011 WL 2457656, at *5 (D.
Hawai`i June 15, 2011) ("Although Plaintiff submitted exhibits
purporting to establish his annual insurance premiums on the
subject property, Plaintiff submitted no affidavit or declaration
authenticating them and the court therefore need not consider
them on summary judgment." (footnote omitted) (citing <u>Las Vegas
Sands, LLC v. Nehme</u>, 632 F.3d 526, 532-33 (9th Cir. 2011)).
Because these documents do not prejudice the Defendants, and for
the sake of judicial economy, the Court will consider them.  The
Court also notes, however, that Plaintiff attached a Declaration
of Sharon Skyward, RN ("Skyward Declaration 1").  <u>See</u> Pltf.'s
CSOF in Opp. to Defs.' Summary Judgment Motion A, Skyward Decl.
1.  This declaration is not signed, and also includes an exhibit
that is over one hundred pages long.  An unsigned declaration
violates both 28 U.S.C. § 1746 and Rule 7.6 of the Local Rules of
Practice of the United States District Court for the District of
Hawai`i ("Local Rules").  Moreover, Plaintiff was notified of
this omission on multiple occasions, including at the hearing on
the summary judgment motions.  Plaintiff did not make any effort
to correct this glaring omission.  Therefore the Court will not
consider Skyward Declaration 1 or the documents attached thereto.

Del Castillo ("Del Castillo Decl."), Exh. 6 (9/15/16 Depo. Trans.

of Ronald Fujimoto, D.O. ("Pltf.'s Fujimoto Depo.")), at 88-89

(describing the condition of Plaintiff's PMD), 171 (describing

the type of PMD requested under Medicare); id., Exh. 9 (9/15/16

Depo. Trans. of Jack Sanders ("Pltf.'s Sanders Depo.")), at 67-68

(also describing the condition of Plaintiff's PMD).[8]  Finally,

Plaintiff cites 42 U.S.C. § 1396a(a)(8) and 42 C.F.R.

§ 438.210(d)(1), which similarly fail to contradict Defendants'

position.[9]  [Pltf.'s CSOF in Opp. to Defs.' Summary Judgment

_____

[8] Pursuant to Local Rule 56.1(h), "[a]ffidavits or
declarations setting forth facts and/or authenticating exhibits,
as well as exhibits themselves, shall only be attached to the
concise statement."  Plaintiff did not attach Plaintiff's
Fujimoto Deposition or Plaintiff's Sanders Deposition to
Plaintiff's CSOF in Opposition to Defendant's Summary Judgment
Motion A.  Moreover, the exhibit numbers Plaintiff cites are
wrong.  In the future, Plaintiff's counsel would be well served
by reviewing the Local Rules, as well as their own work.

[9] Plaintiff also cites "Contract: 50.700," "Dkt. 213-4 [RFP
at 278]," "Covenants:  80.340.7," and "Dkt 213-7."  These
citations are, at best, incomplete.  Local Rule 56.1(f) states,
in relevant part, "the court shall have no independent duty to
review exhibits in their entirety, but rather will review only
those portions of the exhibits specifically identified in the
concise statements."  Incomplete or indecipherable citations are
not "specifically identified."  As such, the Court is under no
duty to review these exhibits.  However, for the sake of
completeness, the Court will attempt to do so.  "Contract:
50.700" appears to reference to the contract between the State of
Hawai`i and Defendants regarding QUEST Expanded Access ("QExA
Contract").  See Del Castillo Decl., Exh. 2 (QExA Contract).
Thus, the incomplete citation is also a citation to a document
that is not part of Plaintiff's CSOF in Opposition to Plaintiff's
Summary Judgment Motion A.  Section 50.700 of the QExA Contract
provides, inter alia, deadlines for informing a Medicaid insured
of preauthorization request decisions.  Further, "Dkt. 213-4 [RFP
                                              (continued...)

9

Motion A at ¶ 3.] The Court concludes that Defendants' statement of facts is undisputed on this matter. Given the Supreme Court's holding in <u>Heckler</u>, it is clear that Plaintiff's claims regarding maintenance and/or repair of his PMD, as well as issues related to a loaner PMD, are inextricably intertwined with a Medicare benefits decision, and must be dismissed. The Court FINDS that there is no question of material fact and Defendants are entitled to judgment as a matter of law. Insofar as they challenge an alleged failure by Defendants to provide maintenance and repair of Plaintiff's PMD, and/or the denial of a loaner PMD, paragraphs 36, 73, 76-77, 79, 83, 148, 149, and 206 of the Complaint, paragraphs 2-3, 9-18, 30-35, and 40-45 of the Supplemental Complaint, and any other part of the Complaint or Supplemental Complaint related to this matter are HEREBY DISMISSED.[10]

---

[9](...continued)
at 278]" appears to reference the Deposition of Amendeep Somal, M.D, which is also part of a concise statement in support of a separate motion, and does not discuss whether or not Medicare is responsible for PMD repairs and maintenance. <u>See</u> <u>id.</u>, Exh. 3 (7/18/16 Depo. Trans. of Amendeep Somal, M.D. ("Pltf.'s Somal Depo.")). The Court does not know what "Covenants: 80.340.7" intends to cite, and it will therefore not be considered. Finally, "Dkt. 213-7" is Plaintiff's Fujimoto Deposition, where he affirmed the statement "if the primary insurance denies, Medicaid is secondary." <u>See</u> Pltf.'s Fujimoto Depo. at 175. None of these documents directly or even indirectly dispute Defendants stated fact regarding PMD repairs.

[10] Defendants also challenge Plaintiff's claims regarding a denial of a PMD request because Plaintiff's Medicaid plan never denied such a request. [Mem. in Supp. of Defs.' Summary Judgment Motion A at 26.] The Court finds that this issue, insofar as it
(continued...)

## 2.   **Denial of Plaintiff's PMD Requests**

Defendants argue that Plaintiff's Medicaid plan never denied his PMD request. [Mem. in Supp. of Def.'s Summary Judgment Motion A at 26.] Plaintiff asserts that the Medicaid plan knew of his need for a PMD as early as February 5, 2013, and that, because the Medicaid plan did not confirm that the PMD was covered by Medicare, they had an obligation to provide him with a new PMD. [Mem. in Opp. to Def.'s Summary Judgment Motion A at 18.]

It is clear from the record that Plaintiff's first request for a new PMD was effectively submitted on February 5, 2013 ("First Request"), and that it was denied by Plaintiff's Medicare plan on February 19, 2013 ("First Denial").[11] [Heywood

_____

[10](...continued)
relates to Plaintiff's Medicare plan, was sufficiently covered in the Medicare Act Order. Moreover, Plaintiff's Medicaid benefits are discussed *infra*. Further, Defendants seek dismissal of any claims related to delays in Plaintiff's applications when the requests were not before Defendants as Plaintiff's Medicaid provider. [Id. at 27-28.] The Court finds that this issue, too, was sufficiently covered in the Medicare Act Order.

[11] Exactly who submitted the First Request is disputed. See Def.'s Summary Judgment Motion A CSOF at ¶ 5 ("The first PMD coverage request was submitted by Experea on 2/5/2013[.]"); Pltf.'s CSOF in Opp. to Def.'s Summary Judgment Motion A at ¶ 5.1 (disputing Defendants' position). It is clear from the record that, while the First Request was likely submitted for the first time on January 31, 2013, see First Denial at 879, it was resubmitted after Plaintiff was notified on February 4, 2013 that Plaintiff's Medicare benefits provider could not read the original form, see id. at 878 (2/4/13 letter informing Plaintiff that his insurer could not read the form he submitted); id. at
(continued...)

Decl., Exh. B at 875 (First Denial); id. at 877 (First Request).[12]  The First Request included only Plaintiff's Medicare number.  [Heywood Decl. at ¶ 11.]  For dual eligible parties, pre-authorization forms are first sent to the primary insurer – in this case, Medicare.  [Id. at ¶ 3.]  Plaintiff never submitted the First Request to his Medicaid plan.  [Id. at ¶ 12.] On May 28, 2013 Plaintiff submitted a second request for pre-authorization of a new PMD ("Second Request"), and it was denied on June 11, 2013 ("Second Denial").  [Id., Exh. E at 852 (Second Request); id., Exh. C at 850 (Second Denial).]  The Second Request also used Plaintiff's Medicare number.

    After the Second Denial, the request was transferred to Plaintiffs' Medicaid plan for possible coverage.  The Medicaid plan received the Second Request on June 11, 2013, and began to review it on June 12, 2013.  [Id., Exh. F (Defendants' CareOne Notification notes regarding Plaintiff's PMD requests ("Defendants' Notes")) at 767.]  The Medicaid plan determined that it needed additional information, and requested an extension in making its decision on the Second Request.  [Id. at 761-62.] On June 25, 2013, Defendants informed Plaintiff that they would

----

[11](...continued)
877 (2/5/13 resubmission of request by Experea).

    [12] Many of the exhibits to the Heywood Declaration appear to be consecutively paginated, but the page numbers are often hard to see.  The Court will therefore refer to the page numbers assigned by Defendants during discovery.

need more time to make their decision, and that they would need

to make a home visit ("6/25/13 Letter").[13]  [Heywood Decl., Exh.

G.]  On June 26, 2013, Dr. Fujimoto visited Plaintiff at home,

along with Sanders, Defendants' Assistive Technology

Professional, Sharon Skyward ("Skyward"), Service Coordinator,

and Kirsten Hackworth, Service Coordinator Manager.  [Id., Exh. H

(Member Notes Report for Plaintiff from 6/26/13 to 1/9/14) at

---

[13] The contract between the State of Hawai`i and Defendants
regarding QUEST Expanded Access states that:

> For standard authorization decisions, the health
> plan shall provide notice as expeditiously as the
> member's health condition requires but no longer
> than fourteen (14) days following the receipt of
> the request for service.  An extension may be
> granted for up to fourteen (14) additional days if
> the member or the provider requests the extension,
> or if the health plan justifies a need for
> additional information and the extension is in the
> member's interest.

[Heywood Decl., Exh. U (QExA Contract) at 278.]  Moreover, the
QExA contract sets forth a deadline for informing a covered party
of a denial of a request for coverage:

> For standard service authorization decisions that
> deny or limit services:  as expeditiously as the
> member's health condition requires, but not more
> than fourteen (14) days following receipt of
> request for service, with a possible extension of
> up to fourteen (14) additional days (total time
> frame allowed with extension is twenty-eight (28)
> days from the date of the request for services if
> (1) the recipient or provider requests an
> extension or (2) the health plan justifies a need
> for additional information and how the extension
> is in the member's interest.

Id. at 291.

34.]  Because Dr. Fujimoto believed that Medicare would cover a
new PMD for Plaintiff if the request were submitted properly, on
July 5, 2013, Sanders and Dr. Fujimoto had a web conference with
Plaintiff's physical therapist, Debra Horiuchi, D.P.T.[14]  [Defs.
Summary Judgment Motion A CSOF, Decl. of Ronald Fujimoto, D.O.
("Fujimoto Decl.") at ¶ 6.]  During the web conference,
Dr. Fujimoto asked "Dr. Horiuchi to withdraw the request and
submit a corrected request" in order to "expedite the approval
process through Medicare and Medicaid, rather than going through
the appeal process."  [Id. at ¶ 7.]  Thereafter, Dr. Horiuchi
withdrew the Second Request, no decision was made on the Second
Request, and Defendants therefore did not provide Plaintiff with
any notice of decision.  [Id. at ¶¶ 7-9.]

On July 26, 2013, Experea, the PMD vendor, was
instructed to make changes to Plaintiff's Medicare PMD
application, [Heywood Decl., Exh. S (9/26/16 Depo. Trans. of
Liane Otake) at 153-55,] and, on August 16, 2013, Experea
confirmed that it did so [id., Exh. R (8/16/13 email from
Kevin Phillips at Experea Healthcare to Liane Otake)].  However,
Wheelchair Professionals, the PMD provider ("WCP"), did not
submit the third PMD request until November 1, 2013 ("Third

_____

[14] Dr. Horiuchi married in 2012, and currently goes by the
last name Uechi.  However, during the events at issue here, she
still went by Horiuchi, her maiden name, at work.  [Heywood Decl,
Exh. K (9/12/16 Depo. Trans. of Debra Lynne Uechi, DPT, aka Debra
Lynne Horiuchi, DPT ("Defs.' Horiuchi Depo.")) at 6-7.]

Request"). [Id., Exh. L.] On November 7, 2013, WCP informed
Sanders that Plaintiff had told them that he would not accept any
PMD that did not include everything that he had requested, and
that they were retracting the quote. [Id., Exh. M (11/7/13 email
from Hillary Duran, Manager of Central Order Processing at WCP,
to Sanders).] On November 9, 2013, the Third Request was denied.
[Defendants' Notes at 781; Heywood Decl., Exh. N (Medicare denial
of Third Request).]

Medicaid began reviewing the Third Request on
November 11, 2013, [Defendants' Notes at 781,] and approved
coverage of the PMD on November 19, 2013 ("11/19/13
Authorization") [Heywood Decl., Exh. O (11/19/13 Authorization)].
Because he had not received the PMD by December 12, 2013,
Plaintiff submitted a grievance to his Medicaid plan ("12/12/13
Grievance"). [Id., Exh. P (1/10/14 response to 12/12/13
Grievance ("1/10/14 Response")).] The 1/10/14 Response explained
that WCP informed Defendants that it was waiting on additional
items that needed to be added to the PMD, but approval of those
items was only requested by WCP on December 30, 2013. [Id.]
Because the 11/19/13 Authorization expired on 12/31/13, a new
authorization had to be opened. [11/19/13 Authorization at 467
(showing expiration date of 12/31/13); Defendants' Notes at 792.]
On January 10, 2014, Dr. Horiuchi conducted a new PMD assessment
that removed certain accessories that had previously been

requested ("1/10/14 Assessment").[15] [Heywood Decl., Exh. Q.] On January 13, 2014, the Medicaid plan received a new request ("Fourth Request"), and it was approved the same day. [Defendants' Notes at 784.] Finally, in February 2014, Plaintiff received a new PMD. [Heywood Decl., Exh. A (6/10/16 Depo. Trans. of Juan Rios Quinones ("Quinones Depo.") at 121.]

Plaintiff's efforts to challenge this progression of events falls flat. First, Plaintiff argues that he did not receive the 6/25/13 Letter, and that he was not notified that any of his healthcare providers received it. [Pltf.'s CSOF in Opp. to Def.'s Summary Judgment Motion A, Decl. of Juan Rios Quinones ("Quinones Decl.") at ¶¶ 3-4.] Plaintiff, however, does not assert that the 6/25/13 Letter was not sent, or that the request itself violated the relevant regulations.[16] Next, Plaintiff

_____

[15] In her note about the 1/10/14 Assessment ("1/10/14 Progress Note"), Dr. Horiuchi explained that "[Plaintiff] was agreeable to all of the documented changes and report with spec sheet was submitted to Experea for processing." [Heywood Decl., Exh. D.]

[16] Plaintiff also disputes the list of information in the 6/25/13 Letter. See Pltf.'s CSOF in Opp. to Def.'s Summary Judgment Motion A at ¶ 19; id., Decl. of Sharon Skyward, RN (No. 3) ("Skyward Decl. 3") at ¶¶ 6-8. The Court notes that the Skyward Declaration 3 does not appear to have actually been signed by Skyward at any point, but instead looks like a copy of a copy of Skyward's signature. See Skyward Decl. 3 at pg. 6. This is a violation of both 28 U.S.C. § 1746 and Local Rule 7.6. Even if the declaration complied with the relevant rules, the cited testimony does not undermine Defendants' argument. Skyward alleges that she disagreed with 6/25/13 Letter, prepared "booklets" to show the relevant parties where the information
(continued...)

16

alleges that there was an ulterior motive to Dr. Fujimoto's suggestion that Dr. Horiuchi withdraw the Second Request. <u>See, e.g.</u>, Pltf.'s CSOF in Opp. to Summary Judgment Motion A at ¶ 33 ("Purpose was to attempt, speculatively, to establish the liability of the Medicare Plan."). Plaintiff does not cite any documents to support this allegation, likely because it is not supported by the record. Dr. Fujimoto believed that, although Medicare would not approve a "power elevating seat," he "intended to add that feature to the base wheelchair under Plaintiff's Medicaid coverage once Medicare had covered what it would cover." [Fujimoto Decl. at ¶ 5.] To that end, Dr. Fujimoto suggested that Dr. Horiuchi withdraw the Second Request and submit a new one, which he believed would save time. [<u>Id.</u> at ¶ 7.] Further, any attempt by Plaintiff to establish that Dr. Fujimoto's communications with Dr. Horiuchi were misleading or ill-intentioned, <u>see</u> Pltf.'s CSOF in Opp. to Defs.' Summary Judgment Motion A at ¶ 32, is unfounded. In response to questions from Plaintiff's attorney at her deposition, Dr. Horiuchi explained how she came to the decision to withdraw the Second Request:

---

[16](...continued)
requested was located in the records they already had, and provided these booklets to the other home visit attendees "at the beginning of the home visit." [Skyward Decl. 3 at ¶¶ 5-7.] None of this information contradicts the facts that Defendants believed they needed more information, that they set up a home visit, and that they attended that home visit.

Q    Yeah.  You testified earlier that
Dr. Fujimoto told you that in order to
facilitate and get [Plaintiff's] wheelchair
approved more quickly, it was best to
withdraw the request.  Is that an accurate
restatement of what you said?

A    It is an accurate restatement.  I'm – I do
want to go on record as saying that part of
that is a little bit of a guess, because,
again, I'm very fuzzy on what happened in
those meetings.

Q    Sure.  Understood.  And you did testify that
you at least understood Dr. Fujimoto to the
extent that [Plaintiff's wheelchair] would be
delayed or denied further if you didn't
withdraw the request.  Is that an accurate
restatement of what you said?

A    I think – I think a better way to say that
would be that withdrawing and resubmitting
the request would be faster than allowing the
current process to continue.

Q    Okay.  So from – do you have any memory
whatsoever of having an understanding or
having been given a reason why the process
was stopped or slowed in the case that you
had submitted?

A    Yes, and I know that a reason was given.

Q    Okay.

A    What that reason is, I'm fuzzy on.  I know
that it had to do with the insurance
protocols and like how things are – the
process of approvals and denials, and where
paperwork goes during that process, but I
don't know exactly what they told me.  I just
– I knew that he was trying to fix this – fix
the situation, and so he did what was
recommended at the time.

[Pltf.'s CSOF in Opp. to Defs.' Summary Judgment Motion A,

Exh. 12 (9/12/16 Depo Trans. of Debra Lynne Uechi, DPT, aka Debra

18

Lynne Horiuchi, DPT ("Pltf.'s Horiuchi Depo.")) at 171-72.]
Moreover, in response to a question from Defendants' attorney
about a phone call from Dr. Fujimoto, Dr. Horiuchi replied that,
"if it was Dr. Fujimoto's recommendation to withdraw and resubmit
the request, then we would have complied, because our
understanding was that we were moving forward with the best
intentions." [Id. at 189.] Plaintiff provides no evidence to
show that Dr. Fujimoto's intentions were anything to the
contrary.

Third, Plaintiff argues that he was the only person who
could withdraw the Second Request. The only evidence he provides
to support this position, however, is an answer from Dr. Fujimoto
at his deposition explaining that there was no "specific
authority" that he relied on when he suggested that Dr. Horiuchi
withdraw the Second Request. See Pltf.'s Fujimoto Depo. at 176.
Plaintiff does not address Dr. Fujimoto's assertion that,
"[b]ecause preauthorization requests must be submitted by the
member's treating provider, the provider can agree to withdraw
the request." [Fujimoto Decl. at ¶ 7.] In fact, "[i]t is not
uncommon for a treating provider to withdraw a preauthorization
request and submit an improved request, based on discussions with
the health plan, rather than have the request be denied." [Id.]
Plaintiff also alleges that Defendants violated relevant
regulations when they failed to notify him that the Second

Request was withdrawn, see Pltf.'s CSOF in Opp. to Defs.' Summary

Judgment Motion A at ¶ 37, but, again, the evidence he cites does

not support his claim.  See Pltf.'s Fujimoto Depo. at 134

(stating that Defendants are responsible for keeping insurance

members informed of what is happening with their benefit

requests); Pltf.'s Horiuchi Depo. at 186 (admitting that

Plaintiff had a right to know that the Second Request was

withdrawn).  In addition, Dr. Horiuchi admitted that it was

likely her responsibility to inform Plaintiff of the withdrawal.

See Defs.' Horiuchi Depo. at 184.[17]

Finally, Plaintiff disputes the approval and

sufficiency of the PMD that was finally provided to him.  First,

Plaintiff takes issue with Defendants' assertion that the

11/19/13 Authorization was an approval of Medicaid coverage

because it was "not approved unless and until Plaintiff was

reassessed."  [Pltf.'s CSOF in Opp. to Defs.' Summary Judgment

Motion A at ¶ 51.1.]  Plaintiff does not dispute that the

_____

[17] Plaintiff's challenges to this argument are equally
unconvincing.  First, Plaintiff cites the same passage from
Dr. Fujimoto's deposition that he cited to support his position
that Defendants had an obligation to notify Plaintiff of the
withdrawal, and that the Court has already rejected.  See Pltf.'s
CSOF in Opp. to Def.'s Summary Judgment Motion A at ¶ 39.
Second, he cites a separate passage from Dr. Horiuchi's
deposition that does not speak to which party had the
responsibility to notify Plaintiff of the withdrawal.  See
Pltf.'s Horiuchi Depo. at 188 ("I – I think [Plaintiff] should
have known when the request got withdrawn.  I cannot say that I
did or didn't do it, though, and that's – that's it.").

11/19/13 Authorization expired on December 31, 2013, or that, after Plaintiff rejected the PMD specified in the 11/19/13 Authorization, WCP did not request approval for certain additional accessories until December 30, 2013. Thus, it is clear form the record that the 11/19/13 Authorization was not "conditional," but that it expired, which required a new assessment. It is also clear from the record that the 1/10/14 Assessment and the 1/10/14 Progress Note provided Plaintiff with a medically sufficient PMD. Plaintiff challenges this factual assertion by citing the deposition of Plaintiff's doctor, Amendeep Somal, M.D. [Pltf.'s CSOF in Opp. to Def.'s Summary Judgment Motion A at ¶ 62.] At her deposition, Dr. Somal indicated that, at Plaintiff's appointment in July 2012, it was clear that "[h]e needed a new chair" and, "based on his mobility level at the time, the physical therapists and I did a wheelchair prescription for what we thought was medically necessary for him to become independent again, following the surgery." [Id., Exh. 14 (7/18/16 Depo. Trans. of Amendeep Somal, M.D.) at 3.[18]] Upon further questioning, however, Dr. Somal corrected her previous statement:

> A    You had asked in the past about why there was
>      no wheelchair prescription, and I think the
>      reason is we weren't able to prescribe the

---

[18] The page numbers of the deposition are very hard to read, and the Court will therefore refer to the page numbers assigned by this district court's electronic case filing system.

> wheelchair at the time because we didn't have
> anyone doing these type of specialty
> prescriptions. And that's why [Plaintiff]
> was referred to Kapiolani.
>
> Q   So am I correct then that your testimony
>     earlier that there was a wheelchair
>     prescription from [Plaintiff's] time as an
>     inpatient at Rehab Hospital of the Pacific,
>     that testimony is incorrect; is that right?
>
> A   I believe so. If I'm thinking back, Like I
>     said, we weren't able to perform wheelchair –
>     seating at – it's called a seating and
>     positioning evaluation, a wheelchair seating
>     and positioning evaluation. And we were not
>     doing them at that time.
>
>     So our inpatient therapists do make
>     recommendations. But when it comes to
>     specialty wheelchairs, like power seating and
>     that kind of stuff, that prescription may not
>     have gone anywhere, because our therapists
>     weren't qualified to do 'em at the time.

[Defs.' Concise Statement of Facts in Opposition to Pltf.'s CSOF in Opp. to Defs.' Summary Judgment Motion A, filed under seal on 11/14/16 (dkt. no. 234), Decl. of Dianne Winter Brookins, Exh. V (7/18/16 Depo. Trans. of Amendeep Somal, M.D.) at 66.]   Thus, Dr. Somal and her staff could not make the proper assessment, and Plaintiff's argument must be rejected.[19]

---

[19] At her deposition, Dr. Horiuchi explained why she removed certain accessories from Plaintiff's PMD. See Defs.' Horiuchi Depo. at 86-88, 91, 129-29, and 139-45. Further, while Plaintiff contests Dr. Horiuchi's representation in the 1/10/14 Progress Note that he agreed to the changes to the PMD, [Quinones Decl. at ¶ 29 ("My 'agreement' to delete the power elevating legrests was obtained under extreme duress because I could not endure another delay so I [had] no choice."),] Plaintiff does not assert that he made this known to Dr. Horiuchi, or that she had any reason to

(continued...)

In sum, Defendants considered a request for coverage of Plaintiff's PMD on two occasions. When Defendants received the Second Request, they stated that they needed additional time – as permitted by the applicable regulations – and the Second Request was withdrawn before Defendants had to make a decision. When Defendants received the Third Request, they approved it within the allotted time, but there were delays unrelated to Defendants' actions or control. As a result of the delays, a new assessment had to be completed, a Fourth Request was submitted, and Plaintiff received his PMD in early February 2014. Therefore, with regard to Count IV, Defendants did not take any action that violated the Medicaid statute or regulations, nor did they ever exceed the time allotted for them to make a decision on Plaintiff's requests. The Court FINDS that there is no question of material fact, and CONCLUDES that Defendants are entitled to judgment as a matter of law as to Count IV.

## B.    <u>Count VI – Tort of Bad Faith</u>

Plaintiff alleges that Defendants committed the tort of bad faith by, *inter alia*: "withholding approval of Plaintiff's PMD to secure his agreement to a lesser benefit than the benefit to which he was entitled"; "withholding . . . medically necessary benefits"; refusing to replace the joystick on Plaintiff's PMD;

---

[19](...continued)
suspect that his agreement was not genuine.

refusing to provide Plaintiff with a loaner PMD; and "damag[ing] the very protection or security which Plaintiff was entitled to expect from a health insurer in Hawai`i." [Complaint at ¶¶ 199, 201, 205-07.] Defendants counter argument is twofold: (1) "Plaintiff's claim for bad faith mishandling of his claim for a new wheelchair based on Dr. Fujimoto having performed a medical necessity analysis cannot be sustained"; and (2) "Plaintiff has not alleged any conduct by his UHC Medicaid plan that rises to the level of 'bad faith mishandling' of his claim for a new wheelchair." [Mem. in Supp. of Defs.' Summary Judgment Motion A at 37, 42.] Plaintiff's only defense of Count VI is his assertion that, pursuant to 42 C.F.R. § 433.139(c), "[Defendants'] speculation that Medicare **should** pay the claim was an insufficient basis, as a matter of law, for refusing to approve and pay the claim." [Mem. in Opp. to Defs.' Summary Judgment Motion A at 18 (emphasis in original).]

This Court has stated:

> Hawai`i courts have recognized that "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawai`i 120, 123-24, 920 P.2d 334, 337-38 (1996) (citations omitted). "Good faith performance 'emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" Hawaii Leasing v. Klein, 5 Haw. App. 450, 456, 698 P.2d 309, 313 (1985) (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)). This district court, however, has observed that:

24

> Hawai`i courts have not recognized a
> separate tort cause of action for bad faith
> or breach of the duty of good faith and fair
> dealing based upon any type of contract in
> any circumstances.  Moreover, in <u>Francis v.
> Lee Enterprises, Inc.</u>, 89 Hawai`i 234, 971
> P.2d 707, 711-12 (1999), the Hawai`i Supreme
> Court stressed the importance that claims of
> bad faith be limited to the insurance context
> or situations involving special relationships
> characterized by elements of fiduciary
> responsibility, public interest, and
> adhesion. . . .

> <u>Sung v. Hamilton</u>, 710 F. Supp. 2d 1036, 1050 (D.
> Hawai`i 2010).

<u>Flynn v. Marriott Ownership Resorts, Inc.</u>, 165 F. Supp. 3d 955,

981-82 (D. Hawai`i 2016) (some internal quotation marks omitted).

As the Court has previously discussed, Plaintiff has not

identified any action by Defendants that violated the relevant

statutes or the contract at issue.  Instead, Defendants have

shown that, on two different occasions they received an

application for Medicaid coverage of Plaintiff's PMD, and on both

occasions, they acted properly.

Moreover, Plaintiff's reference to § 433.139(c) is

wholly inapplicable here.  Section 433.139(c) states:

> Probable Liability is not established or benefits
> are not available at the time is filed.  If the
> probable existence of third party liability cannot
> be established or third party benefits are not
> available to pay the beneficiary's medical
> expenses at the time the claim is filed, the
> agency must pay the full amount allowed under the
> agency's payment schedule.

Here, Plaintiff's Medicaid plan never denied his request for coverage – the first time that they were presented with a claim, it was withdrawn, and the second time it was approved. Moreover, Plaintiff's assertion that Defendants "should have accepted the claim on February 5, 2013," or "at the very latest . . . when it determined that the PMD was medically necessary on July 5, 2013," is factually impossible. Defendants did not even receive the Second Request until June 11, 2013, and it was withdrawn shortly after July 5, 2013. <u>See</u> *supra* at Section I.A.2. Thus, there was nothing for Defendants to approve.[20] The Court FINDS that there is no question of material fact, and CONCLUDES that Defendants are entitled to judgment as a matter of law on Count VI.

---

[20] The case law that Plaintiff cites to support his claim is not binding on this Court, and, even if it were, is inapplicable to this case. <u>See</u> Mem. in Opp. to Defs.' Summary Judgment Motion A at 14-18. In <u>Miller v. Wladyslaw Estate</u>, a plaintiff was injured, and the treating hospital filed a statutory lien against any settlement the plaintiff received from a company involved in the collision with the plaintiff. 547 F.3d 273, 276 (5th Cir. 2008). The Fifth Circuit held that the hospital had a pre-existing lien and that, even though the plaintiff became Medicaid eligible in the interim, the lien was still valid. <u>Id.</u> at 285. In <u>Duke University Medical Center v. Bruton</u>, a North Carolina state appellate court held that the state Medicaid program could not deny Medicaid payments to patients who were eligible for Medicare, but had not applied for Medicare benefits. 516 S.E.2d 633, 641 (1999). Finally, Plaintiff cites <u>Hunter v. Chiles</u>, in which a federal district court in Florida concluded that the state Medicaid program could not deny a medically necessary device because of speculation that "other payors" may exist. 944 F. Supp 914, 922 (S.D. Fla. 1996). The identity of the "other payors" is not specified. Here, Defendants did not deny Plaintiff's requests based on third-party liability. In fact, they did not deny Plaintiff's requests at all.

### 3. __Counts VII and VIII – Emotional Distress__

Defendants also seek summary judgment on Plaintiff's emotional distress claims.  Defendants correctly point out that, under Hawai`i law, "before the issue of damages (emotional distress and others) may be considered, the plaintiff must first prove liability for bad faith, *i.e.*, that the defendant insurer breached its implied covenant of good faith and fair dealing in its dealings with its insured."  __Miller v. Hartford Life Ins. Co.__, 126 Hawai`i 165, 178, 268 P.3d 418, 431 (2011).[21]  Because the Court has granted the motion as to Counts IV and VI, Plaintiff cannot maintain Counts VII and VIII.  The Court FINDS that there is no question of material fact and CONCLUDES that Defendants are entitled to judgment as a matter of law on Counts VII and VIII.  Defendants' Summary Judgment Motion A is therefore GRANTED.

---

[21] __Miller__ was originally filed in a Hawai`i state court, but was removed to federal district court.  126 Hawai`i at 172, 268 P.3d at 425.  The plaintiff in __Miller__ brought claims against the defendant for "(1) insurer bad faith, breach of implied covenant of good faith and fair dealing; (2) negligent infliction of emotional distress (NIED); (3) intentional infliction of emotional distress (IIED); and (4) punitive damages."  __Id.__ (footnote omitted).  The United States District Court for the District of Hawai`i certified three questions to the Hawai`i Supreme Court.  __Id.__ at 166, 268 P.3d at 419.

## II. **Defendants' Summary Judgment Motion B**

### A. **Count X – Breach of Continuing Duty of Good Faith**

Defendants' Summary Judgment Motion B seeks summary Judgment on Count X for breach of the continuing duty of good faith. [Mem. in Supp. of Defs.' Summary Judgment Motion B at 1, 16-18.] Defendants argue that "Hawai`i has not recognized a cause of action for 'malicious defense,' which is essentially what Plaintiff's 'bad faith litigation tactics' claim in his Supplemental Complaint purports to be." [Mem. in Supp. of Defs.' Summary Judgment Motion B at 1.] Plaintiff counters that the malicious defense can be the basis for some kinds of recovery under Hawai`i tort law.[22] [Mem. in Opp. to Defs.' Summary Judgment Motion B at 12-14.]

In <u>Young v. Allstate Insurance Co.</u>, the Hawai`i Supreme Court held that:

---

[22] The Court notes that Plaintiff does not dispute that he is bringing a claim for malicious defense, and the Court will therefore treat Count X as such. <u>See</u>, Mem. in Opp. to Defs.' Summary Judgment Motion B at 12 (section heading stating that "Malicious Defense Conduct Can Be the Basis for The Recovery Of Emotional Distress Damages Under Hawai`i Law"). Moreover, much of the memorandum in opposition to Defendants' Summary Judgment Motion B concerns Plaintiff's claims related to the repair and maintenance of his PMD, as well as issues related to a loaner PMD. <u>See</u> Mem. in Opp. to Defs.' Summary Judgment Motion B at 2-5, 10-11. The Court has already dismissed any claims related to these issues for the reasons set forth in the Medicare Act Order, which have been explained and emphasized many times during the course of this litigation. <u>See</u> *supra* at § I.A.1.

> This jurisdiction has not previously recognized a malicious defense claim, and we decline to do so now. We do not believe that recognizing the tort of malicious defense is necessary where (1) the threat of subsequent litigation will have a chilling effect on a party's legitimate defenses, and (2) existing rules and tort law compensate plaintiffs for the harm they suffer when defendants' litigation tactics are brought in bad faith. Moreover, it is not appropriate to derive the tort of malicious defense from the tort of malicious prosecution where the tort of malicious prosecution remedies harms resulting from the **initiation** of a lawsuit. Accordingly, we affirm the circuit court's order dismissing [the plaintiff's] malicious defense claim.

119 Hawai`i 403, 416, 198 P.3d 666, 679 (2008) (emphasis in Young). In Young, the supreme court also explained that, "[i]n our view . . . such offenses are sufficiently deterred by Hawaii's rules and statutes that authorize the court to sanction the malicious defendant, and the tort of IIED. Accordingly, the tort of malicious defense is unnecessary." Id. at 423, 198 P.3d at 686 (footnotes and citations omitted).

Plaintiff does not dispute the holding in Young, but attempts to distinguish it by asserting that, in that case, the Hawai`i Supreme Court determined that the defendant insurance company did not owe a duty of good faith and fair dealing to the plaintiff "[b]ecause there was no contractual relationship between them." [Mem. in Opp. to Defs.' Summary Judgment Motion B at 12 (citation omitted).] Plaintiff does not cite to any relevant case law that supports his position that his contractual relationship with Defendants provides him with a cognizable cause

29

of action for malicious defense under Hawai`i law.  Nor does he cite any reason why the Court should deviate from the reasoning provided by the state supreme court in <u>Young</u>.  This Court does not see any reason to do so.  Because Hawai`i law does not recognize a tort of malicious defense, the Court FINDS that there is no question of material fact and CONCLUDES that Defendants are entitled to judgment as a matter of law on Count X.

### B.    <u>Emotional Distress Claims</u>

Defendants' Summary Judgment Motion B also seeks a ruling in their favor on Plaintiff's emotional distress claims.  First, Plaintiff's NIED claim in the Supplemental Complaint relates to either delaying or denying preauthorization of Plaintiff's PMD.  [Suppl. Complaint at ¶¶ 30-35.]  The Court has already determined that Defendants:  (1) were not responsible for any delay in the preauthorization of Plaintiff's PMD; and (2) did not deny preauthorization for Plaintiff's PMD.  "Although both IIED and NIED are independent torts, there still must be some underlying intentional or negligent action undertaken by the defendant in order to render the IIED/NIED claim cognizable."  <u>Calleon v. Miyagi</u>, 76 Hawai`i 310, 320, 876 P.2d 1278, 1288 (1994).  Accordingly, the Court FINDS that there is no question of material fact and CONCLUDES that Defendants are entitled to judgment as a matter of law on Plaintiff's NIED claims in the Supplemental Complaint.

Similarly, and for the same reasons, insofar as
Plaintiff's IIED claim in the Supplemental Complaint relates to
an alleged delay or denial of Plaintiff's Medicaid benefits, the
Court FINDS that there is no question of material fact and
CONCLUDES that Defendants are entitled to judgment as a matter of
law.  However, Plaintiff also submits that <u>Young</u> allows for an
IIED claim based on an opposing party's litigation tactics.
[Mem. in Opp. to Defs.' Summary Judgment Motion B at 12-14.]

> A plaintiff may, however, state a claim for
> IIED because of his or her relationship with the
> defendant.  "The extreme and outrageous character
> of the conduct may arise from an abuse by the
> actor of a position, or a relation with the other,
> which gives him actual or apparent authority over
> the other, or power to affect his interests."
> Restatement [(Second) of Torts] § 46 comment
> e. . . . .
>
> In the same way, a plaintiff may assert a
> claim for IIED for suffering from the defendant's
> conduct during a prior lawsuit.  A party is not
> liable for merely "insist[ing] upon his legal
> rights in a permissible way," Restatement § 46
> comment g, but it may be liable for its conduct in
> the prior litigation that is not justifiable.  In
> other words, the elements of IIED – though
> narrower and more refined than that of the tort of
> malicious defense – do not preclude a successful
> plaintiff from seeking damages for suffering from
> a third party's conduct in a previous lawsuit.
>
> . . . . As part of Allstate's litigation
> tactics, Allstate offered [the plaintiff] merely
> $5,000 to settle her claims, then raised its offer
> to $5,300, even though it was aware that its
> insured was liable for the accident and that her
> medical expenses from the accident exceed this
> offer.  Additionally, we believe that the
> complaint plainly alleged [the first, third, and
> fourth element of IIED] by averring that the

Defendants' intentional conduct caused [the plaintiff] to experience severe anxiety, worry, fear, and mental and emotional distress." See also Fletcher v. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 89 Cal. Rptr. 78 (1970) (affirming the $250,000 judgment against the defendants, an insurance company and its claims supervisor, where defendants refused to make payments under the insured's policy and acted for the purpose of causing the plaintiff to settle a nonexistent dispute). Consistent with the tort of IIED, a defendant should be held liable for a subsequent lawsuit if he or she engaged in outrageous conduct causing the plaintiff distress.

Young, 119 Hawai`i at 425-26, 198 P.3d at 688-89 (some alterations in Young).

The litigation tactics noted in the Supplemental Complaint include allegedly: making false statements about when Defendants received Plaintiff's request for a replacement PMD; threatening Skyward regarding subpoenaed documents; threatening Morris Mitsunaga, M.D., about the length of his deposition; and threatening Kyle Mitsunaga, M.D., also regarding his deposition. [Suppl. Complaint at ¶¶ 24-25.] These allegations involve third parties, and are not based upon Defendants' direct interactions with Plaintiff.[23] In addition, Plaintiff's claim does not

---

[23] Even if the Court were to find that Plaintiff brings the type of IIED claim contemplated in Young, Plaintiff's claim would still fail. "[T]he tort of IIED consists of four elements: 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Young, 119 Hawai`i at 429, 198 P.3d at 692 (footnote, citation, and internal quotation marks omitted). None of the conduct alleged by Plaintiff is outrageous. See Enoka v. AIG Haw. Ins. Co., 109

(continued...)

concern a previous lawsuit in which Plaintiff was successful.[24]

The Court therefore FINDS that Plaintiff does not state a

separate claim for IIED for Defendants' litigation tactics and

CONCLUDES that Defendants are entitled to judgment as a matter of

law on all of the IIED claims in the Supplemental Complaint.

Accordingly, Defendants' Summary Judgment Motion B is HEREBY

GRANTED.

## III. **Plaintiff's Summary Judgment Motion**

The Court has granted Defendants' Summary Judgment

Motion A and Defendants' Summary Judgment Motion B.  As a result,

---

[23](...continued)
Hawai`i 537, 559, 129 P.3d 850, 872 (2006) ("The term
'outrageous' has been construed to mean without cause or excuse
and beyond all bounds of decency." (citation and internal
quotation marks omitted)).  In addition, the cases cited by
Plaintiff to support his position are inapposite.  See Mem. in
Opp. to Defs.' Summary Judgment Motion B at 13.  The first,
Barefield v. DPIC Co., Inc., is a West Virginia Supreme Court
case discussing the relief available under a state statute.  600
S.E. 2d 256 (2004).  The second, Sinclair v. Zurich American
Insurance Co., discusses "what appears to be the majority view
that allows evidence of an attorney's litigation conduct to be
admissible as evidence of bad faith in rare cases involving
extraordinary facts."  129 F. Supp. 3d 1252, 1258 (D.N.M. 2015)
(citation omitted).  Plaintiff alleges neither "extraordinary
facts" in the instant matter nor that Hawai`i courts have
recognized the admissibility of this type of evidence.

[24] The Court notes that, in challenging Plaintiff's
contentions regarding Young, Defendants misstate the facts.
Young did not make its finding regarding IIED "in reference to
Allstate's conduct in defending Young in the first-party
insurance context."  Reply in Supp. of Defs.' Summary Judgment
Motion B at 20.  In fact, Allstate represented the other party to
the accident, and convinced Young that she did not need an
attorney.  Young, 119 Hawai`i at 409, 198 P.3d at 672.

there are no claims remaining in the instant matter.  Plaintiff's Summary Judgment Motion is therefore DENIED AS MOOT.

**CONCLUSION**

On the basis of the foregoing:  Defendants' Motion for Summary Judgment on Counts IV, VI, VII, and VIII, filed on October 24, 2016, is HEREBY GRANTED; Defendants' Motion for Summary Judgment on Count X of Plaintiff's Supplemental Complaint, filed on October 24, 2016, is HEREBY GRANTED; and Plaintiff's Motion for Partial Summary Judgment, also filed on October 24, 2016, is HEREBY DENIED AS MOOT.  There being no remaining claims in this case, the Clerk's Office is directed to enter judgment and close this case on **April 19, 2017**, unless Plaintiff files a motion for reconsideration of this Order by **April 17, 2017**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 18, 2017.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**JUAN RIOS QUINONES VS. UNITEDHEALTH GROUP INC., ET AL; CIVIL 14-00497 LEK-RLP; AMENDED ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS IV, VI, VII, AND VIII; (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT X OF PLAINTIFF'S SUPPLEMENTAL COMPLAINT; AND (3) DENYING AS MOOT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**